UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                      :

          -against-                          :

JONATHAN FELIZ,                                :

                Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

09 Cr. 195-2 (GBD)

GEORGE B. DANIELS, United States District Judge:

Defendant Jonathan Feliz moves to reduce his sentence on compassionate release grounds

pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (*See* Mot. to Reduce Sentence ("Mot."), ECF No. 1072;

Supplemental Mem. in Supp. Mot. to Reduce Sentence ("Supp. Mem."), ECF No. 1073.)

Defendant argues that there are extraordinary and compelling reasons justifying a sentence

reduction including: (1) several changes in law that have created a disparity between his Guidelines

range and mandatory minimum today and at the time of sentencing, and (2) the impact of COVID-

19 on his sentence. (Supp. Mem. at 1.) The Government opposes Defendant's motion. (Gov.'s

Mem. in Opp. to Mot. to Reduce Sentence ("Opp."), ECF No. 1079.) For the reasons set forth

below, this Court DENIES Defendant's motion.

## I.    FACTUAL BACKGROUND

Defendant was a leader of the Manhattan faction of the Trinitarios, a violent street gang.

(Feliz Presentence Investigation Report ("PSR"), ¶¶ 50, 52.) The Trinitarios worked closely with

the Washington Heights Marijuana Organization ("WHMO") which controlled marijuana sales on at least four blocks of the Washington Heights neighborhood in Manhattan. (*See id.* ¶ 46.)

Defendant, as both a leader of the Trinitarios and a member of the WHMO, engaged in a wide array of violent criminal conduct. (*Id.* ¶¶ 50–51.) Defendant conspired to distribute more than 100 kilograms of marijuana and arranged the smuggling of drugs into correctional facilities. (*Id.* ¶¶ 51, 82.) Defendant also managed "the Apartment," a Trinitarios stash location which held five loaded firearms, more than 140 rounds of ammunition, and 400 grams of marijuana packaged for distribution. (*Id.* ¶ 130.)

Defendant orchestrated one murder and two attempted murders during his time as a Trinitarios leader. In the summer of 2006, Defendant, his brother, and his half-brother put a "hit" out on Skeilin Camacho after Camacho stole approximately $150,000 in marijuana profits from a Trinitarios stash house. (*Id.* ¶ 77.) On September 25, 2006, a Trinitarios member shot Camacho in the leg, but failed to kill him. (*Id.* ¶ 78.) Defendant and his brother paid the shooter $10,000 for his efforts. (*Id.*) On November 23, 2006 while driving around Washington Heights, Defendant and several others spotted Camacho. (*Id.* ¶ 80.) Defendant directed two Trinitarios members to shoot him. (*Id.*) Again, the Trinitarios wounded Camacho but failed to kill him. (*Id.*) During the shooting, the Trinitarios also spotted Roy Abreu, and shot him in retaliation for a previous shooting. (*Id.*) Abreu died from his wounds. (*Id.*)

In 2008 and 2009, Defendant orchestrated the takeover of a rival drug dealer, Jimmy Lopez's block. (*Id.* ¶ 81.) Starting in late 2008, Defendant placed several workers immediately adjacent to the location where Lopez had long maintained his own profitable drug-selling operation. (*Id.*) Defendant ordered a Trinitarios member to store a firearm at the drug-selling spot.

(*Id.*) On two separate days in January 2009, Trinitarios members attempted to kill Lopez. (*Id.*) The Trinitarios fired at Lopez but failed to hit him. (*Id.*)

After being charged in an S10 superseding indictment, Defendant faced a mandatory minimum sentence of 70 years' imprisonment, and a maximum sentence of life imprisonment. (Opp. at 8–10.) Ultimately, Defendant negotiated a plea deal in which he pleaded guilty to using and carrying firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), and 2, and using, carrying, and discharging firearms during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) & (c)(1)(C)(i), and 2. (S12 Superseding Information, ECF No. 659.)

The plea agreement determined that Defendant qualified as a career offender with a criminal history category of VI, based on his extensive criminal record. (PSR ¶ 4.) Defendant's three stipulated career offender predicates included: (1) fifth-degree criminal sale of a controlled substance, (2) third-degree criminal possession with intent to sell a controlled substance, and (3) attempted burglary. (*Id.*) Based on Defendant's criminal history category and total offense level, the plea agreement calculated a stipulated Guidelines range of 262 to 327 months' imprisonment. (*Id.*)

Defendant's Guidelines range, however, was superseded by a mandatory minimum term of imprisonment. (*Id.*) Count One carried a mandatory minimum of 5 years' (60 months') imprisonment. (*Id.*) Under the sentencing scheme at the time, Defendant's two § 924(c) offenses were to be "stacked." 18 U.S.C. § 924(c)(1)(C)(i) (2006 ed.). As a result, Count Two carried a mandatory consecutive minimum of 25 years' (300 months') imprisonment. (PSR ¶ 4.) Consequently, Defendant faced a mandatory minimum and Guidelines range of 30 years' (360 months') imprisonment. (*Id.*)

At sentencing, this Court imposed the mandatory minimum sentence of 30 years' imprisonment. (*See* Judgment, ECF No. 711, at 2.) Defendant has served more than 16 years of his 30-year sentence. During his term of imprisonment, Defendant has lost significant good time credit. At the time the Government filed its response, Feliz had 12 disciplinary infractions, including three infractions for fighting with or assaulting another inmate, three drug and alcohol related infractions, and an infraction for possessing a dangerous weapon. (Opp., Disciplinary Record.) Defendant has lost 291 days of good time credit. (*Id.*) Defendant's time in prison has also been marked by the COVID-19 pandemic. (Supp. Mem. at 11.) Defendant argues that he has been subjected to "unexpectedly harsh conditions of confinement," including "lockdowns, lost family visits, and the fear of contracting a fatal disease." (*Id.* at 1.)

## II.    LEGAL STANDARD

Save for limited exceptions, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). One such exception is provided in 18 U.S.C. § 3582(c)(1)(A)(i), often called the "compassionate release" statute, which, following an amendment by the First Step Act in 2018, now empowers a defendant to bring his own motion requesting a reduced sentence. *See, e.g., United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020); *United States v. Rivera-Rios*, No. 20-1773, 2022 WL 14206094, at *2 (2d Cir. Oct. 25, 2022).

A court may reduce a term of imprisonment pursuant to the compassionate release statute if it finds that (1) the defendant's circumstances present extraordinary and compelling reasons to warrant a reduction, (2) the factors prescribed in 18 U.S.C. § 3553(a) do not outweigh such extraordinary and compelling reasons, and (3) a reduction would be consistent with the relevant policy statements of the Sentencing Commission, i.e., the policy statement in U.S. Sentencing Guidelines Manual § 1B1.13 ("Policy Statement 1B1.13."). 18 U.S.C. § 3582(c)(1)(A); *see also,*

*United States v. Seabrook*, No. 16 Cr. 467 (AKH), 2023 WL 2207585, at *2–3 (S.D.N.Y. Feb. 23, 2023) (citations omitted).

### III.    A REDUCTION OF SENTENCE IS NOT WARRANTED

#### A. The Section 3553 Factors Weigh Against a Reduction

The Section 3553(a) factors counsel against Defendant's early release at this time. Defendant's sentence appropriately reflects the gravity of his offense and the need for deterrence. His crime is serious and warrants him serving his full term. Defendant was involved with two violent criminal organizations. (PSR ¶¶ 50–51.) Under his leadership, the Trinitarios and WHMO trafficked an extraordinary quantity of drugs onto the streets and into correctional facilities. (*Id.* ¶¶ 51, 82.) In order to expand his drug trafficking operation and stifle opposition, Defendant also directed multiple schemes to murder his rivals. On Defendant's orders, his fellow Trinitarios members murdered Roy Abreu, and attempted to murder Jimmy Lopez and Skeilin Camacho. (*Id.* ¶¶ 77–81.) Given the record, the nature and circumstances of the offense, and the history and characteristics of the Defendant, no reduction in sentence is warranted.

#### B. A Sentence Reduction Is Inconsistent with Policy Statement 1B1.13

Policy Statement 1B1.13 requires this Court to determine that Defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. Given the serious violent nature of his crime, Defendant has not demonstrated that his immediate release would not be "a danger to the safety of any other person or to the community." *Id.* Furthermore, while Defendant argues he has "taken meaningful steps to rehabilitate himself," his record in prison shows otherwise. (Supp. Mem. at 1.) Defendant has successfully completed multiple educational programs while in BOP custody. (Supp. Mem. at 9.) However, as Defendant himself admits, he "does not have a clean disciplinary record." (*Id.* at 10.)

Defendant has lost significant good time credit while incarcerated due to no less than 12 disciplinary infractions, including several violent offenses. (Opp., Disciplinary Record.) Defendant's conduct in prison strongly weighs against his early release under Policy Statement 1B1.13.

## C. No Extraordinary and Compelling Reasons Exist to Grant a Sentence Reduction

Defendant argues that the following "extraordinary and compelling" reasons exist for his early release: (1) several changes in law that have created a disparity between his Guidelines range and mandatory minimum today and at the time of sentencing; and (2) the impact of COVID-19 on his sentence. (Supp. Mem. at 1.) These arguments are unavailing.

### a.  Unusually Long Sentence

Defendant cites to three changes in law as extraordinary and compelling reasons for a sentence reduction: (1) U.S. Sentencing Guidelines Amendment 798's impact on his career offender status and Guidelines range, (2) the impact of *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018) on his career offender status and Guidelines range, and (3) the First Step Act's impact on his mandatory minimum due to the elimination of "stacking." (Supp. Mem. at 1.) Defendant contends that "current law would subject him to a statutory mandatory minimum of 15 years, not 30," and "current law would subject him to a Guidelines range of 180 months, not 360." (Supp. Mem. at 4.)

As an initial matter, this Court must determine whether each cited change in law may be considered here. The U.S. Sentencing Guidelines Manual instructs that "a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive)" may constitute an "extraordinary and compelling reason" for a sentence reduction only if (1) the defendant has served more than 10 years of his term of imprisonment, and (2) "such change would produce a

6

gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6).

Here, Defendant has served more than 10 years of his sentence, and he argues that the changes in law reduce both his Guidelines range and mandatory minimum from 30 to 15 years' imprisonment. Therefore, this Court may consider both the First Step Act's elimination of stacking and *Townsend*'s impact on Defendant's career criminal classification because they are nonretroactive changes in law, and not amendments to the Guidelines Manual. U.S.S.G. § 1B1.13(b)(6). Sentencing Guidelines Amendment 798 may not be considered as it is a nonretroactive amendment to the Guidelines Manual. *See id.*

Defendant argues that he "was sentenced to the mandatory minimum of 30 years for his stacked 18 U.S.C. § 924(c) convictions. Under current law, which eliminates § 924(c) stacking, the mandatory minimum would drop to 15 years." (Supp. Mem. at 1.) Defendant further argues that under current law, his Guidelines range "would also drop by half, to 180 months, because [he] would no longer qualify as a career offender." (Supp. Mem. at 1.) Under *United States v. Townsend*, fifth-degree and third-degree criminal sale of a controlled substance, two of Defendant's three stipulated prior offenses, are no longer considered predicate offenses. *See* 897 F.3d at 75; (*see also* Supp. Mem. at 8.)

This District's decision in *Musa v. United States*, 502 F. Supp. 3d 803 (S.D.N.Y. 2020) is instructive here. In *Musa*, the court considered petitioner Musa's request for compassionate release. In support of his motion, Musa pointed to the First Step Act's changes to section 18 U.S.C. § 924(c) and the consequent reduction of his mandatory minimum. *Musa*, 502 F. Supp. 3d at 812. The *Musa* court rejected this argument. The court found that the "change in the law [was] not enough, standing alone, to automatically merit Musa's release." *Id.* While "the recent changes in

the law support[ed] Musa's application . . . discretionary relief [was] not warranted because Musa [] failed to identify additional, individualized factors justifying his release." *Id.* Importantly, the court pointed to the fact that Musa had "not demonstrated a prolonged track record of rehabilitation." *Id.* at 813. The court noted that Musa's lack of rehabilitation distinguished his case from other cases in this District where courts granted compassionate release based in part on Defendants' successful rehabilitation and short disciplinary records. *Id.*

Defendant here argues that his cited changes in law and the resultant impact on his Guidelines range and mandatory minimum are extraordinary and compelling reasons for a sentence reduction. (Supp. Mem. at 1.) However, as in *Musa*, this argument is unavailing. The changes in law alone are insufficient to warrant a sentence reduction. *See Musa*, 502 F. Supp. 3d at 812. Because Defendant "has failed to identify additional, individualized factors justifying his release," "discretionary relief is not warranted." *Id.* Of particular note is Defendant's poor record while incarcerated. As previously discussed, Defendant's prison record does not evidence the "significant efforts" at rehabilitation he argues he has engaged in. (Supp. Mem. at 4.) Defendant has repeatedly engaged in wrongful conduct while incarcerated and has lost nearly a year of good time credit as a result. *See Musa*, 502 F. Supp. 3d at 813 (concluding that the defendant's "many years of continued misbehavior" "alone undermine[d]" his application).

### b. COVID-19

Defendant also argues that the COVID-19 pandemic weighs in favor of a sentence reduction. (Supp. Mem. at 11.) Specifically, Defendant highlights the "unanticipated severity" of his prison term, including lockdowns and the risk of contracting COVID-19. (*Id.*)

Defendant's unexpected conditions of confinement do not warrant his early release. *See United States v. Farmer*, No. 19-CR-427 (LTS), 2022 WL 47517 (S.D.N.Y. Jan. 5, 2022)

("[G]eneralized statements about the conditions of confinement [during the COVID-19 pandemic] do not constitute compelling reasons for compassionate release."). Furthermore, "[s]ince [Defendant] filed his motion, the threat from COVID-19 has diminished nationwide and within the BOP." *United States v. Roman*, No. 19 Crim. 116 (KMW), 2022 WL 17819525, at *2 (S.D.N.Y. Dec. 20, 2022). The Federal Bureau of Prisons' statistics indicate that there were zero open cases of COVID-19 at FCI Gilmer as of January 21, 2025. *See* Inmate COVID-19 Data, FED. BUREAU PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited August 20, 2025). Nationwide, rates of severe illness and death resulting from the virus have decreased significantly due to advancements in antiviral treatments.[1] In sum, COVID-19 is not an extraordinary and compelling reason for Defendant's release.

## IV.    CONCLUSION

Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED. The Clerk of Court is directed to close the open motion at ECF. No 1072.

Dated: New York, New York
       August 25, 2025

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

---

[1] *See* The Changing Threat of COVID-19, CTR. DISEASE CONTROL, https://www.cdc.gov/ncird/whats-new/changing-threat-covid-19.html (last updated August 20, 2025).